UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STELLA WHEELER,

     Plaintiff,

         v.

THE CITY OF LANSING and
DETECTIVE DENNIS WIRTH,

     Defendants.[1]

Case No. 1:08-cv-530

HONORABLE PAUL L. MALONEY

---

## OPINION and ORDER

**Denying the Plaintiff's Motion for Summary Judgment on Count 2, Unconstitutional Seizure:**
Holding that the Seizure of Certain Items Violated the Fourth Amendment
But Wirth Is Entitled to Qualified Immunity for Participating in Their Seizure

**Granting the Defendants' Motion to Dismiss or for Summary Judgment:**
Granting Motion to Dismiss Federal Claims Against the City (Counts 1-3) for Failure to State a Claim;

Granting Wirth's Motion for SJ on Count 1, Unconstitutional Search without a Valid Warrant,
due to Lack of Merit and due to Qualified Immunity

Granting Wirth's Motion for SJ on Count 2, Unconstitutional Seizure without Probable Cause,
Due to Qualified Immunity

Granting Wirth's Motion for SJ on Count 3, Unconstitutional Seizure through Unreasonable Destruction,
for Lack of Merit

---

[1]

      Wheeler also sued Eaton County Sheriff Michael Raines and Police Detective Doug Sharp in their official and individual capacities. At the joint stipulation of the parties, however, the court dismissed Raines and Sharp with prejudice by order dated May 19, 2009. *See* Am Comp ¶ 2 (citing Document #50). Apparently Wheeler dismissed Sharp from the case due to bankruptcy and settled her claims against Raines (Count Six - Michigan FOIA and Count Nine - Failure to Train and Supervise). Accordingly, the caption no longer lists Raines and Sharp as defendants.

**Declining Supplemental Jurisdiction over the Remaining State-Law Claims Against Wirth & City Terminating and Closing the Case**

This is a civil-rights action under 42 U.S.C. § 1983 arising out of a no-knock raid conducted on the home of plaintiff Stella Wheeler ("Wheeler") on January 30, 2008 by defendant Detective Dennis Wirth ("Wirth") and dismissed-defendant Douglas Sharp ("Sharp"), both  Lansing Police Detectives, and other non-party law-enforcement officers.  Wheeler claims that the defendants – Wirth and the Michigan municipal corporation , the City of Lansing ("the City") – acting under color of law, violated her Fourth Amendment right to be free from unreasonable search and seizure in several respects.  *See* First Amended Complaint filed July 2009 ("Am Comp") ¶¶ 2A and 3. Wheeler complains that Wirth *et al.* conducted the entry, search, and seizure of personal property without a valid warrant and without a good-faith belief that the warrant was valid.  *See* Am Comp ¶¶ 9, 12, 21, 24 and 30-33.[2]

The two remaining defendants, the City and Wirth, jointly filed a motion to dismiss for failure to state a claim and/or for summary judgment in July 2009; Wheeler filed an opposition brief in September 2009, and the defendants filed a reply brief in October 2009.  *See* Doc. Nos. 57 & 58, 70 and 77.  In July 2009 plaintiff Wheeler moved for summary judgment against Wirth only on count two (her claim for unreasonable seizure, through alleged destruction, of personal property in violation of the Fourth Amendment); Wirth filed an opposition brief in August 2009, and Wheeler did not file a reply brief.  *See* Doc. Nos. 59-60 and 64.

---

[2]

The complaint also contended that the allegedly-unwarranted search and seizure was not justified by exigent circumstances.  Neither the briefs nor the oral arguments addressed the exigent-circumstances issue, so the court has not addressed it either.

The court will dismiss all three constitutional claims against the City for failure to state a claim, simply because the amended complaint does not allege any wrongdoing by the City and, in any event, Wheeler disavows any constitutional claims against the City.

For the reasons that follow, the court will grant summary judgment to Detective Wirth on count one, the claim for unconstitutional search due to an invalid warrant; published Sixth Circuit law at the time of the search did not clearly establish that the alleged defects or errors in the warrant, such as its statement of the wrong address, rendered the warrant invalid as to the entry and search.

The court will also grant summary judgment to Detective Wirth on count two, the claim for unconstitutional seizure of certain items without probable cause. The court agrees with plaintiff Wheeler that the warrant affidavit failed to establish probable cause for the seizure of certain items; Wirth is entitled to qualified immunity, however, because Wheeler fails to identify any published Sixth Circuit precedent at the time of the search which clearly established to an officer in Wirth's position that he could not rely on the warrant to seize those items.

Next, the court will grant summary judgment to Detective Wirth on count three, the claim for unconstitutional seizure by destruction of property (damage to the apartment and alleged theft of cash). Wheeler's opposition brief makes no attempt to show a genuine issue of material fact in support of this claim. Finally, per this district's customary practice, the court will decline supplemental jurisdiction over the state-law claims against both defendants.

## BACKGROUND AND CLAIMS

The Investigation and Preparation of the Search-Warrant Affidavit. Before the search in question, Detectives Wirth and Sharp were investigating more than half a dozen home invasions in

Eaton County, Michigan.  *See* Motion for Summary Judgment filed by the Defendants on July 10, 2009 ("Defs' MSJ"), Exhibit ("Ex") A - Deposition of Detective Dennis Wirth taken March 18, 2009 ("Wirth Dep") at 11.  At oral argument, defense counsel referred to their investigation of as many as nineteen home invasions, though Wheeler's counsel maintained that the defense had not produced documentary evidence to support the allegation that the two detectives had been investigating more than about nine home invasions in the time period leading up to this incident. Nine or nineteen, a serial home invader(s) investigation was ongoing.

In any event, Wirth and Sharp had learned that a gold Pontiac Grand Prix automobile had been involved in three of the home invasions.  *See* Defs' MSJ, Ex A (Wirth Dep) at 13.  During one of the invasions, a homeowner returned home, saw such a vehicle, and wrote down the license-plate number.  It turned out that a vehicle of that make and model, bearing that license plate, though seemingly a different color (beige rather than gold), was registered to Wheeler.  *See* Defs' MSJ Ex B - Deposition of Stella Wheeler taken September 24, 2008 ("Wheeler Dep") at 13-14.  When Wirth called Wheeler and asked her to speak with him about the fact that her car had been seen at the location of a home invasion, she denied knowing about it.  *See* Defs' MSJ Ex B (Wheeler Dep) at 86 & 89.

Wirth's investigation led to the apprehension of Tywone [sic] Brown, who admitted that he had assisted in two home break-ins in Lansing.  Brown identified Michael Adams, Wheeler's boyfriend, as one of the participants in those break-ins, and said that stolen property from the break-ins was being stored in Wheeler's apartment.  *See* Defs' MSJ Ex A (Wirth Dep) at 11.  Wirth contacted Sharp, and the two detectives drove with Brown to Wheeler's apartment.  *See* Defs' MSJ Ex A (Wirth Dep) at 15-16.

Brown pointed out the apartment, which was a duplex with a snow shovel leaning against the front door, and indicated that he had taken stolen property to that apartment. *See* Defs' MSJ Ex A (Wirth Dep) at 17. Wirth noted the address as 1036, apartment number 4, with a green-bladed snow shovel out front. Sharp, who was writing down the information, looked up and saw a sign nearby which read "Maple Tree Court", whereupon he accordingly wrote down "1036 Maple Tree Court." *See* Defs' MSJ Ex A (Wirth Dep) at 17; *see also* Defs' MSJ Ex C - Deposition of Detective Douglas Sharp taken October 24, 2008 ("Sharp Dep") at 25. Wirth and Sharp dropped Brown off at the Delta Township police station and drove together to the Eaton County Prosecutor's office. *See* Defs' MSJ Ex A (Wirth Dep) at 17.

Wirth and Sharp provided information on the home break-ins to an Eaton County assistant prosecutor, who typed up the warrant using 1036 Maple Tree Court #4 as the address, as stated by Sharp, who signed the affidavit. Wirth did not sign it. A State magistrate issued the warrant as requested. *See* Defs' MSJ Ex A (Wirth Dep) at 29, Ex C (Sharp Dep) at 16-17, 25 and 29.

The Warrant Affidavit. In its entirety, the search warrant affidavit, signed and sworn by Sharp on January 30, 2008, reads as follows:

Detective Doug Sharp, Affiant, states that:

**I.      The person, place or thing to be searched is described as and is located at:**

A two-story apartment-style townhouse located at 1036 Mapletree Court #4, Delta Township, Eaton County, MI 48917

**II.     The PROPERTY to be searched for and seized, if found, is specifically described as:**

Proof of ownership and/or occupancy, evidence of home invasions that have occurred in Eaton and Ingham counties in November 2007 - January 2008, including but not limited to personal property (shotguns, long guns, computer and stereo

equipment, cameras, DVD players, video game systems, big screen televisions, necklaces, rings, other jewelry, coin collections, music equipment, car stereo equipment) taken in approximately nineteen home invasions.

**III.** **The FACTS establishing probable cause or the grounds for the search are:**

A.  Detective Doug Sharp, affiant, is employed by the Eaton County Sheriff's Dept. and has been employed in law enforcement for six years.

B.  Affiant [Sharp] was currently investigating several open home invasion complaints that occurred in Eaton County during November through December 2007.

C.  On Tuesday January 29, 2008, Affiant [Sharp] spoke to Lansing Police Detective Dennis Wirth who indicated that he had interviewed a suspect Tywone Deshawn Brown regarding home invasions and that suspect Brown possibly had information regarding home invasions in Eaton and Ingham County.

D.  Detective Wirth obtained a home invasion arrest warrant for Tywone Brown on January 30, 2008 and he was arrested the following day.

E.  Detective Wirth indicated that Tywone Brown admitted to helping with two home invasions which occurred on January 22, 2008 at 3010 Amherst St., Lansing, MI Ingham County and 2530 Bedford St., Lansing MI Ingham County.

F.  Tywone Brown indicated to Detective Wirth that two big screen televisions, a digital camera, Playstation 3 and cash were taken from the homes.

G.  Detective Wirth indicated that criminal complaints had been filed by the home owners of both 3010 Amherst St. and 2530 Bedford St. indicating that televisions, cameras, cash and game systems had been stolen on January 22, 2008; Lansing Police Department complaint #08-0122004715 and 08-0122004704.

H.  Tywone Brown indicated to Detective Wirth that he had helped [someone] known to him as "Five" and Ralph Crenshaw AKA "Ra Ra", unload the stolen items at an address in Elmwood Park apartments, Eaton County.

I.  Detective Wirth compiled a photo array with the booking photo of Ralph Crenshaw and Tywone Brown positively identified Crenshaw as the person he helped to unload the stolen items.

J.      Affiant [Sharp] was advised by Defendant Wirth that after his interview with Tywone Brown, Brown was willing to speak to Affiant regarding possible home invasion in Eaton County.

K.      Tywone Brown offered to show Affiant [Sharp] the location of the home where the stolen property for the home invasions was taken and currently located.

L.      Brown took Affiant [Sharp] to 1036 Mapletree Court Apt #4, Delta Township, Eaton County.

M.      Detective Dan Prueter spoke to the leasing office who indicated that the apartment is leased to Stella Wheeler.

N.      Detective Wirth ran the name of Stella Wheeler on Secretary of State [sic] and located a picture of her; Tywone Brown positively identified Stella Wheeler as "Five's" girlfriend.

This affidavit consists of two (2) pages.

Defs' MSJ, Ex E at 1-2 (capitalization and boldface in original).

Wheeler describes the affidavit-preparation process as follows:

During preparation of the search warrant, both Defendants [Wirth and former defendant Sharp] participated in providing information to the assistant prosecutor (Wirth Dep., p. 20 l. 21 - p. 21, l. 6).

When asked how the number "19" came to be in the second paragraph of the warrant, Defendant Wirth testified that the number represented the total number of home invasions that he and Defendant Sharp were investigating at that time (Wirth Dep., p. 21, ll. 9-17).

Defendant Sharp testified [that] Defendant Wirth provided the information for paragraphs C, D, E, F, G, (maybe) H, I, and J of the affidavit (Sharp Deposition, pp. 15-18) (Sharp's Deposition is Attachment C) Defendant Wirth not only provided it to Defendant Sharp, he provided it directly to the assistant prosecutor (Sharp Dep., p. 17, ll. 20-24).

Defendant Wirth and Defendant Sharp both provide information to the assistant prosecutor as to what categories of information that [sic] they want to search for and seize[,] which becomes paragraph two of the search warrant and affidavit (Sharp Dep., p. 28, l. 23 - p. 24, l. 8).

Defendant Wirth specifically asked that long guns and shotguns be added in the paragraph for items to be seized (Sharp Dep., p., 29, l. 19 - p. 30, l. 6).

P's Opp at 2 (paragraph breaks added).


The Search Warrant.

In its entirety, the search warrant, issued on January 31, 2008, reads as follows:

TO THE SHERIFF OR ANY PEACE OFFICER

Detective Doug Sharp, affiant, has sworn to the attached affidavit stating the following:

**I.      The person, place or thing to be searched is described as and is located at:**

A two-story apartment-style townhouse located at 1036 Mapletree Court #4, Delta Township, Eaton County, MI 48917.

**II.      The PROPERTY to be searched for and seized, if found, is specifically described as:**

Proof of ownership and/or occupancy, evidence of home invasions that have occurred in Eaton and Ingham counties in November 2007 - January 2008, including but not limited to personal property (shotguns, long guns, computer and stereo equipment, cameras, DVD players, video game systems, big screen televisions, necklaces, rings, other jewelry, coin collections, music equipment, car stereo equipment) taken in approximately nineteen [sic, sentence ends there].

Defs' MSJ Ex E at 3.


The Search and Seizure.

Sharp and Wirth then returned to Wheeler's apartment, whereupon they and an Eaton County SWAT team entered the apartment. *See* Defs' MSJ Ex A (Wirth Dep) at 28. Wheeler emphasizes that neither Wirth nor Sharp was in view of the door when the SWAT team entered ahead of them.

*See* P's Opp at 2-3, citing Wirth Dep 26:23 to 25:18 and Sharp Dep 34:8 to 35:15. Four people were in the apartment when they entered: Wheeler, Wheeler's daughter, and two men, Michael Adams and Martel Bowser. *See* Defs' MSJ Ex B (Wheeler Dep) at 36.

The officers found three cameras, three bracelets, a pair of earrings, a CD player, a laptop computer, a television, a PlayStation 2 game system, silver-ownership certificates, a GameBoy Advance game system, and a car stereo; Sharp logged these items, while Wirth merely held them as they were photographed. *See* Defs' MSJ Ex A (Wirth Dep) at 29:5-10. Wirth testified that while he was in Wheeler's home, he did not confirm whether any of the items seized appeared to match items stolen in any of the home break-ins which he had been investigating. *See* Defs' MSJ Ex A (Wirth Dep) 34:7-10.

While logging into evidence a piece of mail addressed to Michael Adams, Sharp discovered that the correct address for Wheeler's apartment was 1036 *Endicott* Court #4, not 1036 Maple Tree Court #4. *See* Defs' MSJ Ex C (Sharp Dep) at 46 & 52. Detective Prueter testified that "[t]here's only one building of 1036 in that whole complex." Defs' MSJ Ex D - Deposition of Detective Daniel G. Prueter taken March 18, 2009 ("Prueter Dep") at 32.

It is undisputed that Wheeler's home was the rented townhouse at 1036 Endicott Court #4, that she was the only signatory to the lease, and that she lived there with her minor child. *See* Am Comp ¶¶ 9 and 59-60. The housing complex, Elmwood Park, contains at least three different named streets which are designated by street signs, as well as at least five (5) buildings of similar construction, color, and material. *See* Am Comp ¶¶ 36 & 39. Each unit is a "townhouse" which has its own direct entrance from the outside, and each of the five buildings has one unit which has the number "4" posted next to the door. *See* Am Comp ¶¶ 37-38.

It is undisputed that the officers provided Wheeler with a warrant authorizing a search of "a two-story apartment-style townhouse located at 1036 Mapletree Court #4, Delta Township, Eaton County, MI 48917", an address which does not exist.  *See* Am Comp ¶¶ 13-14 and 40.

Wheeler attacks the search-warrant affidavit as false.  Specifically, paragraph III-M of the affidavit alleges that "Detective Dan Prueter spoke to the leasing office who indicated that the apartment" listed on the warrant, 1036 Mapletree Court #4, "is leased to Stella Wheeler", Am Comp ¶ 18, when in fact there is no 1036 Mapletree Court #4 and therefore a residence at that address could not have been leased to anybody, *id.* ¶ 19.  Wheeler reasons that

> [t]he lack of particularity in the warrant and affidavit, the incorrect address, the similarity in construction, color, and style in conjunction with the common use of the designator "4" in multiple buildings created a substantial risk that the wrong apartment would be searched.
>
> * * *
>
> The failure to do reasonable independent investigation and independent corroboration created a substantial risk that Defendants Sharp and Wirth would search the wrong apartment.

Am Comp ¶¶ 41 and 44; *see also* Wirth Dep at 18:14-20.  Wheeler further alleges that Wirth and Sharp never attempted to obtain permission from a state judicial officer to search any location other than the non-existent location which was mentioned in Sharp's affidavit and the resulting warrant. *See* Am Comp ¶ 16.

Wheeler also attacks the basis for the factual allegations made in the affidavit.  She alleges that "[t]he only independent investigation done by Defendants Sharp and Wirth relied entirely on the word of a cooperating informant who was accused of larceny and home invasion", and she contends that "[t]he only independent corroboration of the cooperating informant's information was patently incorrect."  Am Comp ¶¶ 42-43.  Specifically, an employee of Wheeler's housing

development told her that the police had come in and asked where she lived. *See* Am Comp ¶ 15.[3]

In count two, Wheeler claims that Detective Wirth committed an unreasonable seizure without probable cause, in violation of the Fourth Amendment. First, Wheeler contends that the warrant affidavit failed to establish probable cause to seize the eleven categories of items which it authorized the police to seize, namely:

Shotguns
Long guns
Computer
Stereo Equipment
DVD players
Necklaces
Rings
Other Jewelry
Coin Collections
Music Equipment
Car Stereo Equipment

Am Comp ¶ 48. Second, Wheeler contends that the police seized items beyond the scope of the probable cause described in the affidavit, namely:

Black 19" RCA Television
Canon "Power Shot" Digital ELPH [camera]
Memorex Am/FM Radio/Disc player with speakers
Gold women's bracelet with clear stones
Gold woman's chain with heart-shaped charm and clear stones

Pair of gold women's earrings with rose
Silver and Gold Eddie Bauer watch
Silver women's Rolex watch
Black 19" RCA Television
Adaptor to Gateway personal computer

Gold and silver men's bracelet

_____

[3]
Wheeler also alleges that the police did not leave a copy of the affidavit with her as required by the warrant's express terms. Am Comp ¶ 17. This allegation appears to be related to one or more of Wheeler's state-law claims, which the court need not address.

> Sony laptop computer
> JVC Car compact-disc player
> GameBoy advance [sic]
> Silver charm with black stone
>
> Gold women's bracelet with clear stones
> Gold women's tennis bracelet with clear stones
> PlayStation 2 game system with two controllers
> 3 Silver Certificates

Am Comp ¶¶ 49-50 (paragraph breaks added).

In count three, Wheeler claims that Detective Wirth and others violated the Fourth Amendment by committing seizure of property through destruction. Namely, Wheeler alleges that Wirth unnecessarily broke the upstairs-bedroom closet doors loose from their tracks and knocked a hole in the drywall in three locations: the "corner drywall bead" between the kitchen and the living room, the corner drywall bead of a closet at the entrance to the upstairs bedroom, and an area at the top of the stairs between a closet and her child's bedroom. *See* Am Comp ¶ 61.

Finally, in count eight, Wheeler seeks punitive damages on the theory that the actions of Wirth *et al* were intentionally malicious and illegal, and "were . . . designed to punish [her] for her lack of knowledge of the actions of her boyfriend – the target of Defendants' investigation." Am Comp ¶¶ 109-110.


**DISCUSSION: Dismissal of All Three Constitutional Claims Against the City**

Wheeler has three federal claims outstanding: counts one, two and three, all of which assert a Fourth Amendment claim pursuant to 42 U.S.C. § 1983. As the defendants correctly point out, *see* Defs' MSJ at 6, none of these counts contains any specific allegations of actionable wrongdoing by the City. This means that Wheeler has failed to state a federal constitutional claim on which

relief can be granted against the City, because "[m]unicipal liability under 42 U.S.C. § 1983 may not be based on a theory of *respondeat superior.*" *Howard v. City of Girard, Ohio*, – F. App'x –, –, 2009 WL 2998216, *2 n.2 (6ᵗʰ Cir. Sept. 21, 2009) (Richard Allen Griffin, J.) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 590 (1978)). Rather, to hold a municipality liable under section 1983, a plaintiff must show that the municipality had an unconstitutional policy or custom which caused a constitutional deprivation. *Howard*, – F. App'x at –, 2009 WL 2998216 at *2 n.2 (citing *Monell*, 436 U.S. at 694). Wheeler has not alleged that the City had any such policy or custom which caused the putatively-unconstitutional search and seizure here.

In any event, Wheeler concedes, "Plaintiff has never made a constitutional claim against Defendant City of Lansing. There is no controversy between the parties as to whether the City of Lansing is liable to Plaintiff for a denial of constitutional rights." P's Opp at 5. Accordingly, the court will dismiss all federal constitutional claims – counts one, two and three – as to the City.

The court will evaluate the balance of the defendants' dispositive motion – now on behalf of Detective Wirth only – as a Rule 56 motion for summary judgment.


### LEGAL STANDARD: SUMMARY JUDGMENT

"Summary judgment is proper if the 'pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Portinga v. Taylor*, 2009 WL 910800, *5, – F. Supp.2d –, – (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (quoting *Patterson v. Hudson Area Schools*, 551 F.3d 438, 444 (6ᵗʰ Cir. 2009) (quoting Fᴇᴅ. R. Cɪᴠ. P. 56(c)); *see also Schreiber v.*

*Philips Display Components Co.*, – F.3d –, –, 2009 WL 2840429, *6 (6th Cir. Sept. 2, 2009).[4]

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial – e.g., if the movant is defending against a claim – "it may meet its burden merely by showing 'that there is an absence of evidence to support the moving party's case.'" *Moldowan v. City of Warren*, – F.3d –, –, 2009 WL 2497969, *12 (6th Cir. Aug. 18, 2009) (quoting *Celotex*, 477 U.S. at 323). *See also Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (movant "need not support its motion with affidavits or other materials 'negating' the opponent's claim"; rather, its initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . .") (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. 2000). *Accord Claspell v. Denso Mfg. Michigan, Inc.*, 2001 WL 1545684, *2 (Mich. App. Dec. 4, 2001) (p.c.) (P.J. O'Connell, Sawyer, Smolenski) ("That standard is exactly the same as the standard for summary disposition used under Michigan law . . . .").

---

[4]

Before the December 2007 amendment, Fed. R. Civ. P. 56(c) stated that summary judgment is appropriate if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Consumers Energy Co.*, 602 F. Supp.2d 829, 845 (W.D. Mich. 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, 266 F. App'x 400, 404 (6th Cir. 2008) (Griffin, J.)).

The amendment was stylistic only. *Portinga v. Taylor*, 2009 WL 910800, *5 n.9 (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (citing *Dobrowiak v. Convenient Family Dentistry, Inc.*, 315 F. App'x 580, 584 n.4 (6th Cir. 2009) (citing Fed. R. Civ. P. 56(c), Adv. Comm. Notes)).

Once the movant has met its burden, the non-movant must present "'significant probative evidence'" to demonstrate that there is more than "'some metaphysical doubt as to the material facts.'" *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (quoting *Moore*, 8 F.3d at 339-40)). The non-movant may not rest on the mere allegations of his pleadings. *Griffin v. Reznick*, 609 F. Supp.2d 695, 698 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, Fed. R. Civ. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *see also Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 278 (6th Cir. 2009). If the movant puts forward evidence – such as affidavits, purported business records, purported government records, etc. – the other party cannot withstand summary judgment by simply sitting mute and failing to challenge the authenticity, admissibility, or veracity of those documents. *See, e.g., Donoho v. Smith Cty. Bd. of Ed.*, 21 F. App'x 293, 298 (6th Cir. 2001) (Boggs, J.) (affirming summary judgment for defendant employer, Circuit noted that plaintiff's "affidavit does nothing to challenge the evidence put forward by the defendants that the last IEP meeting . . . also included provision to her of the apparently usual verbal and written notices of her rights.").[5]

Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there be some genuine issue of *material*

----

[5]

*See, e.g., SBA v. McDonald*, 1985 WL 13600, *1 (6th Cir. Aug. 15, 1985) (p.c.) ("Even assuming the checks and money orders were mailed, there is no genuine issue as to their receipt. McDonald offers nothing to dispute the sworn affidavit that payment was not received. Payment does not occur without receipt. Summary judgment was appropriate.");

*US v. One 1983 Mercedes-Benz 380SL*, 1991 WL 276262, *6 (6th Cir. Dec. 20, 1991) ("[C]laimant's verified claim contains a sworn statement by the company's general manager '[t]hat at no time did A.D.E. have any knowledge or reason to believe that the property in which it claims an interest was being used or would be used in violation of the law.' The government has produced nothing to dispute the truth of that assertion. * * * The government has pointed to no facts that would entitle it to defeat A.D.E.'s claim, and A.D.E. is entitled to summary judgment . . . .");

fact. *ARS*, 602 F. Supp.2d at 845 (citing, *inter alia*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))). And the non-movant "cannot defeat a properly supported motion for summary judgment motion by 'simply arguing that it relies solely or in part upon credibility determinations.'" *Heggie v. Kuzma*, 2009 WL 594908, *10 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) (quoting *Fogerty v. MGM Group Holdings, Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (non-movant may not "have a trial on the hope that a jury may disbelieve factually uncontested proof")).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *cert. denied*, – U.S. –, 128 S.Ct. 1334 (2008),[6] and view the evidence in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences. *Fox v. Eagle Dist. Co., Inc.*, 510 F.3d 587, 592 (6th Cir. 2007) (Griffin, J.); *see also Patterson*, 551 F.3d at 445.[7]

But the court considers its evidence only to the extent that it would be admissible at trial. *ARS*, 602 F. Supp.2d at 845 (citing *Healing Place*, 744 N.W.2d at 177 (citing MICH. CT. R. 2.116(G)(6) and *Veenstra v. Washtenaw Country Club*, 645 N.W.2d 643, 648 (Mich. 2002))).

Ultimately, entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party w[ould] bear the burden of proof at trial." *Davison v. Cole Sewell Corp.*, 231 F. App'x 444,

---

[6]

*Accord Fall v. Loudon*, 2008 WL 375989, *6 (Mich. App. Feb. 12, 2008) (citing *Dolan v. Continental Airlines/Continental Express*, 563 N.W.2d 23, 26 (Mich. 1997)).

[7]

*Accord Denha v. Dart Props., Inc.*, 2009 WL 30459, *1 (Mich. App. Jan. 6, 2009) (p.c.) (P.J. Zahra, JJ. O'Connell & Fort Hood) (citing *Walsh v. Taylor*, 689 N.W.2d 506, 511 (Mich. App. 2004) (citing *Spiek v. MDOT*, 572 N.W.2d 201 (Mich. 1998))).

447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322).[8]  "As Chief Judge Bell has characterized the post-trilogy summary-judgment standard, '[w]hile preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial.'"  *Ellis v. Kaye-Kibbey*, 581 F. Supp.2d 861, 874 (W.D. Mich. 2008) (Maloney, C.J.) (quoting *Wilson*, 112 F. Supp.2d at 654).

### LEGAL STANDARD:  QUALIFIED IMMUNITY

Having dismissed the federal constitutional claims (counts one, two, and three) as to the City for failure to state a claim on which relief can be granted, those claims remain only against Detective Wirth in his individual capacity.  (The first amended complaint does not assert any claims against Wirth in his official capacity.)  In his personal capacity, Wirth is potentially eligible to invoke qualified immunity as a defense to suit.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (qualified immunity is available to a government employee sued in his individual capacity, not one sued in his official capacity) (citing, *inter alia*, *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997))).

---

[8]

A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances . . . ."  *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988).  *Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims.");

*Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. 1991) ("This trilogy of cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992);

*Bowser v. McDonald's Corp.*, 715 F. Supp. 839, 840 (S.D. Tex. 1989) (the trilogy "encouraged federal district courts to use summary judgment more frequently and economically by changing the movant's burden of production . . . and by allowing qualitative review of evidence") (citations omitted).

The purpose of the qualified-immunity defense is to protect government officials from undue interference with their duties and from potentially disabling threats of liability. *Perez v. Oakland Cty.*, 466 F.3d 416, 426 (6th Cir. 2006)). Under the doctrine, "a government employee performing a discretionary function generally is shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moreover, qualified immunity is "'an immunity *from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Scott*, 550 U.S. at ___ n.2, 127 S.Ct. at 1774 n.2.

Once Detective Wirth asserted the defense of qualified immunity, the burden shifted to Wheeler to show that he is *not* entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007). To carry this burden, Wheeler must show that a reasonable law-enforcement officer in Detective Wirth's position would have known that relying on the warrant and conducting the search under the circumstances alleged violated her Fourth Amendment rights under U.S. Supreme Court or Sixth Circuit precedent as it stood on January 31, 2008.

Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional, in light of preexisting law, the unlawfulness must be apparent. *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2005). "Ordinarily, a Supreme Court or Sixth Circuit [Court of Appeals] decision on point is necessary" to clearly establish the right in the relevant context and defeat qualified immunity. *Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004); *see also Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).

As to our Court of Appeals, "precedent" means only its *published* decisions. *See Thompson v. North American Stainless, LP*, 567 F.3d 804, 809 n.2 (6th Cir. 2009) (Griffin, J.) ("Unpublished decisions of this court are not precedentially binding under the doctrine of *stare decisis*.") (citing *US v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)), *pet. cert. filed o.g.*, 78 U.S.L.W. 3113 (U.S. Sept. 3, 2009) (No. 09-291). *See, e.g., Perez v. Oakland Cty.*, 466 F.3d 416, 429 (6th Cir. 2006) (affirming grant of qualified immunity to prison official against Eighth Amendment claim with regard to suicide of plaintiff's son in jail, panel reasoned, "Perez Sr. would have to prove that his son's right to have his serious medical needs treated without deliberate indifference encompassed a right to a correct assessment of his suicide risk or an effective suicide-monitoring arrangement. * * * Perez identifies no pre-November 2002 *published* decision of the U.S. Supreme Court or this court requiring such a determination, nor have we found any.") (emphasis added), *cert. denied*, 552 U.S. 823 (2007); *Bell v. Johnson*, 308 F.3d 594, 608 (6th Cir. 2002) ("[W]e conclude that the district court mischaracterized the law that was clearly established in 1994. The clear weight of *published* authority in this circuit in 1994 directed courts . . . .") (emphasis added).

In other words, for qualified immunity purposes, an unpublished Sixth Circuit decision cannot put a government official on notice that his conduct is unlawful. *See Heggen v. Lee*, 284 F.3d 675, 687 (6th Cir. 2002) ("Addressing the issue of qualified immunity, this Court first stated that there was no *published* opinion from the Sixth Circuit or . . . Supreme Court that would compel the conclusion that the clerk could not dismiss her deputy clerks for political reasons. With no clearly established law in place . . . . * * * This court in *Cope* expressly stated *that the parties had pointed to no law from the Sixth Circuit* or the . . . Supreme *Court that would have put the county clerk on notice that her actions were unconstitutional*.") (emphasis added) (discussing *Cope v. Heltsley*, 128

-19-

F.3d 452, 458 (6th Cir. 1997)).

Moreover, Wheeler cannot defeat Detective Wirth's qualified immunity defense with pre-search precedent "clearly establishing" her general Fourth Amendment right to be free of unreasonable search and seizure:  rather, "'[a] constitutional right must be clearly established *in a particularized sense*.  'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Rippy v. Hataway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

If reasonable police officers in Wirth's position "could disagree on the issue" of whether carrying out the search and seizure violated her Fourth Amendment rights in her specific context and circumstances, "immunity should be recognized."  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999)); *see also Saylor v. Bd. of Ed.*, 118 F.3d 507, 515 (6th Cir. 1997) ( "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." ) (emphasis in original), *cited by Salaam v. McKee*, 2008 WL 363598, *5 (W.D. Mich. Feb. 11, 2008) (Maloney, J.) (holding that prison official was entitled to qualified immunity against prisoner's First Amendment freedom-of-religion claim; binding federal case law at the time of the incident did not clearly establish prisoner's specific right to have a Muslim religious observance at a certain time of day).[9]

---

[9]

    *Contrast Wappler v. Brevard*, 2008 WL 4534037 (W.D. Mich. Sept. 30, 2008) (Maloney, C.J.) (holding that prison employee was not entitled to qualified immunity against prisoner's § 1983 claim that employee violated his constitutional right not to have his legal mail opened outside his presence, as that right was established by published Sixth Circuit decisions pre-dating the challenged conduct, notwithstanding later, arguably-contrary *dicta* from Sixth Circuit Court of Appeals).

**DISCUSSION: 4th AMENDMENT SEARCH AND SEIZURE (Counts 1 and 2)**

**Wirth is Entitled to Qualified Immunity as to the Federal Claims**

<u>At the Time of the Search, Sixth Circuit Precedent Did Not Clearly Establish that the Error</u>

<u>as to Wheeler's Address Rendered the Warrant Invalid under the Circumstances</u>

Wirth contends that the error in the affidavit and warrant regarding Wheeler's address did not render the warrant invalid. The Plaintiff contends to the contrary. The court need not decide that issue. Rather, for purposes of qualified immunity, the court must decide only whether, at the time of the search, Sixth Circuit precedent *clearly established* that the error rendered the warrant invalid under the circumstances. It did not.

Wheeler argues as follows with regard to the address error and its effect on the validity of the warrant:

> Both Defendant Sharp and Defendant Wirth acknowledged that they searched 1036 Endicott #4 and not the address on the warrant of 1036 Mapletree #4. * * * Before the officers left the premises with Plaintiff's property, however, they were clearly aware that they had the wrong address.

> Detective Sharp testified that he realized the address was wrong when he was writing down item 22 on the return (Sharp Dep. 52:4-13). Item 22 on the return is a document from Sparrow Hospital with Michael Adams' name on it bearing an Endicott Street address. The search warrant return is attached to this brief as Attachment A and the document identified as Item 22 is at Attachment G. Even though the building number and apartment number are both wrong [in Return Item 22, the letter from the hospital to Wheeler's boyfriend Adams], the street name was probably sufficient to alert the detectives to the address issue.

> If not, item 23 on the return is a utility bill in Plaintiff's name which clearly shows her address as being 1036 Endicott, #4. *See* Attachment H. Since Defendant Wirth took possession of all seized items (Wirth Dep. 10:7-20 [and] 24:7 to 25:16), a reasonable inference exists that he was aware of the incorrect address.

> Once the address issue was identified, the Defendants had the opportunity to re-contact the magistrate before departing the premises with Plaintiff's property. They knew or should have known at this point that they had a facially defective warrant

and obtained the magistrate's consent to continue the seizure. While they had already invaded plaintiff's privacy, they had not yet completed seizure of her property. It was improper for the Defendants to ignore the error and proceed without obtaining the magistrate's consent. [footnote 14 citing *US v. Tran*, 433 F.3d 472 (6th Cir. 2006)] Regardless of the warrant's validity to the entry, Defendant Wirth cannot justify proceeding with the seizure once he knew of the error.

P's Opp at 6-7 (record citations omitted).

As noted above, it is Wheeler's burden to show that Wirth is not entitled to qualified immunity, and she must do so by identifying Sixth Circuit precedent which clearly established to a reasonable officer in his position that it was unconstitutional to proceed with the search and seizure despite the address error. Wheeler does little to carry this burden. She cites only one decision, *US v. Tran*, 433 F.3d 472 (6th Cir. 2006).

In *Tran* the panel held that the erroneous statement of the premises address in the warrant did <u>not</u> invalidate the warrant under the circumstances. The *Tran* panel explained as follows:

> The defendant claims that Detective Struve changed the street number of the address on the affidavit and warrant to search Kimberly Beauty College after the magistrate had signed the warrant, and the warrant was, therefore, invalid. The challenged alterations involve the address of Kimberly Beauty College, 931 28th Street, S.W., which was mistakenly typed as "937" 28th Street, S.W. in the warrant and accompanying affidavit. In each instance, Detective Struve corrected the mistake after Judge Timmers had signed the warrant and without informing the judge of the mistake. We hold that the alteration of the warrant affidavit by the executing officer was improper, but that the alteration did not eliminate probable cause or render the warrant invalid.
>
> It is clear that the incorrect address in the warrant and the affidavit does not itself invalidate the search warrant. The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991).
>
> *In determining whether the warrant describes with sufficient particularity the place to be searched, we consider: "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that*

-22-

> *some other premises may be mistakenly searched.*"  *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005) . . . .
>
> An error in description does not . . . automatically invalidate a search warrant. *United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002).  "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity "is not whether the description is technically accurate in every detail . . . ."  *Id.* . . . .

*Tran*, 433 F.3d at 479-80 (emphasis added).

Here, Wheeler has not contradicted the defense's allegation, per Detective Prueter, that "[t]here's only one building [numbered] 1036 in that whole complex."  Defs' MSJ Ex D ("Prueter Dep") at 32.  There appears to be no dispute that the complex is the Elmwood Park apartments named in Paragraph III-G of the affidavit.  Consequently, by listing a unit with the building number "1036", the warrant described the place to be searched with sufficient particularity to enable Wirth and the other executing officers to locate and identify the premises with reasonable effort (as indeed they did).  Nor, in that factual context, was there any "reasonable probability" that Wirth and the other executing officers would mistakenly search the wrong premises (as indeed they did not).  Under the standard enunciated by the 2002 published decision Plaintiff cites (*Tran*), the fact that there was only one building in the specifically named complex numbered "1036", standing alone, ensured that the error in the warrant's statement of the building number did not render the warrant invalid.[10]

---

[10]

The government (Defs' MSJ at 7) also relies on *Lyons v. Robinson*, 783 F.2d 737, 738 (8th Cir. 1986), where the search warrant described the premises to be searched as "a single residence with silver siding with red trim located on the south side of Arkinson [sic] Street" and stated that its address was "325 Atkinson Street," while the actual address was 325 *Short* Street.  Holding that the warrant was not rendered invalid by the erroneous address, the *Lyons* panel stated as follows:

> But it is clear that in the circumstances the error in the warrant was not misleading or confusing.  Atkinson and Short Streets intersect in front of Lyons' house.  Sgt.

Nor has the court located any Supreme Court decisions, or published Sixth Circuit decisions, published before January 30, 2008, which would have put an officer in Wirth's position on notice of any rule contrary to this rationale for considering the warrant valid despite the erroneous street address. *A fortiori*, **reasonable police officers in Wirth's position on January 30, 2008 "could" *at the very least* "disagree on the issue" of whether the error in the affidavit and warrant regarding Wheeler's address rendered the warrant invalid,** *see Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). Consequently, Wirth is entitled to immunity against Wheeler's claim that he violated her Fourth Amendment rights by relying on the warrant despite the erroneous address.

<u>Wheeler Fails to Identify Published Sixth Circuit Precedent, At the Time of the Search, Which Clearly Established that the Affidavit's Failure to Provide Factual Support for Probable Cause as to Some Items Rendered the Warrant Invalid as to those Items</u>

In Wirth's motion for summary judgment on count two – unconstitutional search and seizure due to the warrant's failure to adequately describe the items to be seized – he relies on *US v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995), for the proposition that even evidence not described in a warrant may be seized if it is reasonably related to the offense which formed the basis for the warrant. *See*

---

Gibson obviously mistakenly read the street sign. In addition, the warrant provides an accurate physical description of the premises. Moreover, where the same officer both applied for an executed the warrant, a mistaken search is unlikely.

*Lyons*, 783 F.2d at 738. But the government's reliance on *Lyons* is inappropriate. On qualified immunity analysis, this court's duty is to ascertain what *our Circuit's* clearly established law was on the date of the challenged search. An *Eighth* Circuit decision, no matter how similar its facts or how logical its reasoning, simply cannot have been the "law" in the *Sixth* Circuit at any time.

Def's MSJ at 8.[11]  Moreover, Wirth contends that the items actually seized – 3 cameras, 3 bracelets,

1 pair of earrings, a CD player, a laptop computer, a TV, Playstation 2 and Gameboy Advance

video-game systems, and a car stereo – all were in fact described by category in the warrant, which

authorized seizure of, *inter alia*, "computer and stereo equipment, cameras, DVD players, video

game systems, big screen televisions, necklaces, rings, other jewelry, coin collections, music

equipment, [and] car stereo equipment . . . ."  Def's MSJ at 8-9.

**In opposition to summary judgment on count two – unconstitutional search due to the**

**warrant's failure to describe with particularity the items to be seized – Wheeler responds that**

*Brown* is distinguishable, as is the decision which *Brown* cited.  Wheeler argues as follows:

> Defendant relies on *United States v. Brown*, for the assertion that evidence not
> described in a search warrant can be seized if it is reasonably related to the offense
> which formed the basis for the search warrant.  In *Brown*, the items at issue were
> papers showing participation in or documents related to the Ku Klux Klan or other
> white supremacist groups.  In the context of that investigation, the existence of any
> such documents were within the scope of the warrant and affidavit and they were
> described with as much particularity as could be mustered in that investigation.
>
> The panel in *Brown* cited to *United States v. Korman*, to support their assertion that
> evidence of the commission of an offense or the instrumentality of a crime can be
> seized even if not listed in a warrant.  In *Korman*, a green ski jacket was listed in the
> affidavit but not in the warrant.  Since probable cause existed, the seizure of the
> jacket was upheld.
>
> Neither *Brown* nor *Korman* help[s] Defendant Wirth because he did not have
> probable cause to believe that all cameras or televisions or game players in Plaintiff's
> home were stolen, but only those identified by the homeowners from the respective
> locations identified in the affidavit – further limited by information from the

---

[11]

Wirth also relies on *US v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982), for the proposition
that if stolen goods are intermingled with and indistinguishable from lawfully owned goods, the
entire class of property may be seized for inspection and sorting.  *See* Def's MSJ at 8.  But this *Ninth*
Circuit decision cannot be part of clearly-established *Sixth* Circuit as of January 30, 2008 (the date
of the search here) or any other date.  Accordingly, the court also disregards Wheeler's response to
Wirth's reliance on *Hillyard*, *see* P's Opp at 10-11.

informant.  * * *

P's Opp at 9 (footnotes and record citations omitted).

**Wheeler also invokes the principle that** "[t]he validity of a search warrant must be assessed on the basis of information that the officers disclosed, or had a duty to disclose, to the issuing magistrate."  P's Opp at 11 (citing *Maryland v. Garrison*, 480 U.S. 79, 85 (1987)).  Wheeler contends that

> Wirth was solely in possession of considerably greater detail than he chose to provide to the magistrate.  In his deposition, Defendant Wirth was asked to describe his interaction with the assistant prosecutor that [sic] typed the search warrant and affidavit.  He explained:
>
>> Conversation with the prosecutor in Eaton County, Detective Sharp provided her with his information [in] reference to home invasions he had, and I provided her also with the information I had, specifically [in] reference [to] my home invasions, and Tywone [sic] Brown's statement to me pointed out the address, the drive-by, *exactly what we were looking for*, the people involved, and that's how she ended up getting the information to draw up the Affidavit there.
>
> Defendant Wirth clearly did not attempt to describe the items to be seized with the particularity appropriate to the circumstances nor did he attempt to use the specifics that were, in fact, readily available to him.

P's Opp at 11 (quoting Wirth Dep 20:21 to 21:6) (emphasis added by plaintiff).

**The court agrees with Wheeler that the affidavit prepared by the prosecuting attorney, signed by Detective Sharp, and issued by a state magistrate, failed to provide factual allegations sufficient to find probable cause that some of the categories of items ultimately seized were the fruits of crime.**  Specifically, in the third and final section of the Affidavit, entitled "Facts", Paragraphs III-C and III-D of the affidavit stated that Sharp had spoken with Wirth, who had arrested and interviewed Tywone Brown regarding home invasions in the Lansing area. Paragraphs III-E, III-F and III-H of the affidavit stated that Brown admitted helping Wheeler's

boyfriend "Five" and another man with January 22, 2008 home invasions (at 3010 Amherst Street and 2530 Bedford Street in Lansing), during which they stole "two big screen televisions, a digital camera, [a] PlayStation 3 and cash . . . ." Paragraph III-G of the affidavit stated that the owners of those same two homes had filed criminal complaints stating that TVs, cameras, game systems, and cash had indeed been stolen from their homes on that date. (Paragraph III-I dealt with Brown's identification of one Ralph Crenshaw from a photo array, and he is not relevant to this case.) Paragraphs III-J and III-K state that Brown later spoke to Detective Sharp about home invasions in Eaton County, and showed him the apartment where he and "Five" had stored the stolen property. Paragraph III-M states that non-party Detective Prueter spoke to the apartment complex's leasing office and confirmed that that apartment was leased to Wheeler, while Paragraph III-N states that Brown positively identified Wheeler as the girlfriend of "Five."

The affidavit ends after Paragraph III-N, significantly without explaining what reason or evidence there was to believe that any shotguns, long guns, computer and stereo equipment, DVD players, necklaces, rings, other jewelry, coin collections, music equipment, and car stereo equipment (all listed in the affidavit's second section, and in the ultimate list of things to be seized by the warrant) that might be found in Wheeler's apartment were the fruits of crime the two specified home invasions or any other crimes.

Therefore, Sharp's affidavit provided probable cause to believe that some of the items which the warrant authorized to be seized were stolen goods (digital cameras, video-game systems, big-screen televisions and arguably televisions generally, and cash), but did not provide such probable cause for other items which the warrant authorized to be seized.

**The court intimates no opinion as to whether probable cause to seize the latter items**

-27-

**could have been predicated on factual allegations which** (1) stated that those items were the fruits of home invasion, but not did specify which home(s) each category of those items was believed to have been stolen from; (2) specified which home(s) each category of those items was believed to have been stolen from, but failed to allege that the owner of the home(s) had filed a complaint or the police had filed a report stating that such category of property had been stolen from the particular home(s); (3) made errors with regard to the address of one or more homes from which the items turned out to have been stolen; (4) made errors with regard to the date of the home invasions during which the items turned out to have been stolen. In other words, the instant factual scenario is not one where the affidavit provided evidence of an attenuated or less-than-clear link between suspected crime and the latter categories of personal property. Correspondingly, the court intimates no opinion as to whether a police officer might have reasonably relied on a warrant predicated on an affidavit with the arguable infirmities or imperfections listed above. Rather, the affidavit which the prosecuting attorney prepared and which Detective Sharp signed here, provided *no* factual allegations to directly support a finding that the latter categories of items to be seized were the fruits of crime.

The court today puts law enforcement in our district on notice *only* that a warrant based on such an affidavit as was used here, with *zero* evidentiary support for a finding that certain categories of personal property were probably stolen, may not constitutionally be relied on to seize such items.

Yet whether reasonable Sixth Circuit police officers in Wirth's position *had to be* on notice of this view of the law before today's decision – indeed, back in January 2008 – is another matter entirely. And that is precisely the question in the qualified-immunity analysis. Once Wirth invoked the defense of qualified immunity, it became Wheeler's burden to show that it does not apply, *see*

*Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (Daughtrey, Sutton, <u>McKeague</u>) (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)), and that is a heavy burden indeed.[12] Wheeler has not identified Supreme Court or published Sixth Circuit decisions (predating the January 30, 2008 search) which clearly established – with the requisite specificity – that Wirth could be subject to liability (even if the warrant was otherwise valid) for participating in the seizure of some items due to his alleged failure to provide all the identifying information that he had to the prosecutor who drafted the warrant, and/or due to the prosecuting attorney's failure to include information supporting probable cause to believe that those items were the fruits of home invasions. The court finds no Sixth Circuit authority pre-January 30, 2008 *clearly* holding that a police officer may not rely on the judgment of both an attorney (the assistant county prosecutor) and a judge (the magistrate who reviewed the affidavit and concluded that it justified issuance of the warrant as written) in a situation like this one.

Therefore**, Wheeler has not carried her burden of identifying precedent foreclosing the possibility that reasonable police officers in Wirth's position on January 30, 2008 could at least "disagree on the issue",** *Key*, 179 F.3d at 1000**, of whether it was unconstitutional under the circumstances to rely on the warrant to seize all the items it authorized to be seized.** *See generally Saucier v. Katz*, 533 U.S. 194, 203 (2001) (J. Kennedy for the Court, joined by C.J. Rehnquist and JJ. O'Connor, Scalia and Thomas) (as support for refusing to recognize a Fourth Amendment exception to the doctrine of qualified immunity, the Court emphasized the importance of the defense "in an area where officers" customarily "perform their duties with considerable

---

[12]

     *See Martin v. Heideman*, 106 F.3d 1308, 1332 (6th Cir. 1997) (Krupansky, J., dissenting on other grounds) (referring to the plaintiff's "heavy burden" in trying to prove by a preponderance of the evidence that a police officer was not entitled to qualified immunity).

uncertainty as to 'whether particular searches or seizures comport with the Fourth Amendment.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 644 (1987) (Scalia, J.)). Therefore, although the seizure of some items violated Wheeler's Fourth Amendment rights, Wirth is entitled to qualified immunity against count two.[13]

## DISCUSSION
## UNCONSTITUTIONAL SEIZURE BY DESTRUCTION (COUNT THREE)

Wirth convincingly explains why Wheeler fails to show a genuine issue as to whether he unconstitutionally seized her property by unreasonably destroying it. In its entirety, Wirth's argument for summary judgment on count three reads as follows:

> [Wheeler] alleges that during the search three holes were made in the walls of her apartment and her bedroom closet doors were damaged.
>
> Officers executing search warrants must often damage property in order to perform their duties. *Dalia v. United States*, 441 U.S. 238, 258 . . . (1979). *De minimis* damage cannot form the basis of a constitutional violation. *Streater v. Cox*, 2009 WL 1872471[, *7, 338 F. App'x 470, 477] (6th Cir. 2009) [Kethledge, White, <u>D.J. Polster</u>].
>
> In this case, Plaintiff did not pay for the damage to the apartment and she does not even know how much the repair bill was. (Deposition of Plaintiff, pp. 69-70, Exhibit B) Also, there is no evidence that Wirth did any damage to the apartment. Plaintiff testified that she did not see the damage take place nor is she able to identify the individual [who] caused the damage. Wirth testified that he did not do any damage to Plaintiff's apartment nor did he observe any damage to Plaintiff's apartment at any time. (Deposition of Detective Wirth, p. 32, Exhibit A) Thus, Plaintiff has not created an issue of fact with respect to Count III.

Def's MSJ at 13. The court agrees with Wirth's argument on this score and adopts it. (Wheeler's opposition brief does not appear to address count three at all, and her own motion for summary

---

[13]Because Wirth is entitled to qualified immunity, it is unnecessary to address Wirth's invocation of the *Leon* good-faith reliance doctrine.

judgment concerns only count two.)  Wirth has shown the absence of a genuine issue of material fact as to his alleged unreasonable destruction of Wheeler's property/premises, and he is entitled to summary judgment on count three as a result.

## DISCUSSION:  SUPPLEMENTAL JURISDICTION

That leaves only Wheeler's state-law claims.  The court has supplemental jurisdiction[14] over those claims, but our Circuit emphasizes that "'[s]upplemental jurisdiction is a doctrine of discretion . . . not of right.'" *Hendrixson v. BASF Const. Chems. LLC*, 2008 WL 3915156, *20 (W.D. Mich. Aug. 20, 2008) (Maloney, C.J.) (quoting *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003)); *see also Baer v. R&F Coal Co.*, 782 F.2d 600, 602 (6th Cir. 1986) (p.c.) (Krupansky, Guy, D.J. Suhrheinrich) (citing *UMWA v. Gibbs*, 383 U.S. 715, 726 (1966)); *Lake v. Granholm*, 2008 WL 724162, *14 (W.D. Mich. Mar. 17, 2008) (Jonker, J.) (quoting *Habich*).[15]

Having disposed of Wheeler's federal claims, the court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the claims which arise under state law.  *See Allen v. City of Sturgis*, 559 F. Supp.2d 837, 852 (W.D. Mich. 2008) (Maloney, J.) ("'[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.'") (citing, *inter alia*, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3) and *UMWA*, 383 U.S. at 726 ("Certainly if the

---

[14]

"The single term 'supplemental jurisdiction' now encompasses the two judicially created doctrines formerly referred to as 'pendent' and 'ancillary' jurisdiction.  28 U.S.C. § 1367, enacted [in] 1990 . . . , was intended to codify these case law doctrines."  *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 997 n.1 (E.D. Mich. Jan. 23, 1996).

[15]*Accord Tholmer v. Yates*, 2009 WL 174162, *6 n.7 (E.D. Cal. Jan. 26, 2009) (citing *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997)).

federal claims are dismissed before trial . . . the state claims should be dismissed as well."")), *cert. denied*, – U.S. –, 127 S.Ct. 1832 (2007)); *see also Musson Theatrical, Inc. v. Fed Ex Corp.*, 89 F.3d 1244, 1254-55 (6ᵗʰ Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . .").[16]

"There does not appear to be any extraordinary circumstances to justify departing from th[e] general rule" disfavoring supplemental jurisdiction. *Pickelhaupt v. Jackson*, 2008 WL 4457823, *13 (E.D. Mich. July 22, 2008), *R&R adopted in part and rejected in part o.g.*, 2008 WL 4457807 (E.D. Mich. Sept. 30, 2008). The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own State's law governing claim and delivery, conversion, and punitive damages in the first instance. *See Allen*, 559 F. Supp.2d at 852 (citing, *inter alia*, *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6ᵗʰ Cir. 2005) ("[T]he district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law issues based on its consideration of *the interests of justice and comity best served by a state court's resolution of the remaining state law claims*.") (emphasis added)); *State Farm Auto. Ins. Co. v. Carter*, – F. Supp.2d –, 2008 WL 5740100, *18 (W.D. Mich. Oct. 28, 2008) ("When reasonably possible, it is far preferable for Michigan courts to interpret Michigan law . . . . This is even more true [given that Michigan] judges . . . are elected by, and thus directly accountable to, the citizens

---

16

To see just how strong our circuit's presumption against supplemental jurisdiction is, *see Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6ᵗʰ Cir. 1991) (only "*overwhelming* interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed") (emphasis added) and *Brown v. Nationwide Mut. Ins. Co.*, 2005 WL 1223888, *2 n.3 (N.D. Ohio May 23, 2005) (Dowd, J.) ("Although this court has discretion to exercise supplemental jurisdiction over state law claims which are based on the same facts as federal claims . . . , it is not required to do so *and rarely does*.") (emphasis added), *mot. for relief from judgment den.*, 2006 WL 1982943 (N.D. Ohio July 13, 2006).

. . . .").[17]


# ORDER

Plaintiff's motion for summary judgment against Wirth on count two (unconstitutional seizure of property without probable cause) **[document #59] is DENIED**.


The defendants' motion to dismiss for failure to state a claim or for summary judgment as to the entire complaint **[doc. #57] is GRANTED in part** & **DENIED without prejudice in part.**


As to defendant City of Lansing, pursuant to FED. R. CIV. P. 12(b)(6):
Count 1 (Unlawful search & seizure - search without warrant) is **DISMISSED**.
Count 2 (Unlawful search & seizure - seizure without probable cause) is **DISMISSED**.
Count 3 (Unlawful seizure by unreasonable destruction) is **DISMISSED**.
Count 8 (Exemplary Damages) is **DISMISSED** as to the federal claims.

As to defendant Wirth, pursuant to FED. R. CIV. P. 56:
Count 1 (Unlawful search without valid warrant) is **DISMISSED** for lack of merit.
Count 2 (Unlawful seizure w/o probable cause) is **DISMISSED** due to qualified immunity.
Count 3 (Unlawful seizure by unreasonable destruction) is **DISMISSED** for lack of merit.

Count 8 (Exemplary Damages) is **DISMISSED** as to counts 1, 2 and 3.

---

[17]

*Thornton v. Fed Ex Corp.*, 530 F.3d 451, 454 n.1 (6th Cir. 2008) (noting, "[t]he district court awarded summary judgment to Fed Ex on plaintiff's claims under federal law and then, declining to exercise continuing supplemental jurisdiction, dismissed the state law claims without prejudice.");

*Slusher v. Delhi Twp., Ohio*, 2009 WL 2145608 (S.D. Ohio July 14, 2009) (Beckwith, J.);
*Wideman v. Montano*, 2009 WL 1949082 (W.D. Ky. July 7, 2009) (McKinley, J.);
*Westberg v. Russell*, 2008 WL 205208, *1 (W.D. Mich. Jan. 23, 2008) (Enslen, J.);
*Poindexter v. McKee*, 444 F. Supp.2d 783 (W.D. Mich. 2006) (Miles, J.);
*Reinhardt v. Dennis*, 399 F. Supp.2d 803, 811 (W.D. Mich. 2005) (McKeague, J.);
*Glover v. Elliott*, 2007 WL 4557853, *5 (W.D. Mich. Dec. 21, 2007) (Bell, C.J.);
*Forner v. Robinson Twp. Bd.*, 2007 WL 2284251 (W.D. Mich. Aug. 7, 2007) (Quist, J.);
*Herron v. Caruso*, 2005 WL 1862036, *6 (W.D. Mich. Aug. 2, 2005) (Edgar, J.);
*Faller v. Children's Hosp.*, 2009 WL 29878, *2 (S.D. Ohio Jan. 5, 2009) (Dlott, C.J.).

As to both defendant City of Lansing and defendant Wirth, pursuant to 28 U.S.C. § 1367(c):
Count 4 (Claim and Delivery under Michigan law) is **DISMISSED without prejudice.**
Count 6 (Michigan Freedom of Information Act) is **DISMISSED without prejudice**.
Count 7 (Conversion under Michigan law) is **DISMISSED without prejudice**.
Count 8 (Exemplary Damages) is **DISMISSED without prejudice** as to state-law claims.[18]

The separate judgment required by FED. R. CIV. P. 58 will issue contemporaneously.

This is a final and immediately appealable order.[19]

**IT IS SO ORDERED** this  6th  day of January, 2010.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

------

[18]

When a federal district court declines supplemental jurisdiction over state-law claims,

the claims will be dismissed and must be refiled in state court.  To prevent the
limitations period on those claims from expiring while they are pending in federal
court, [28 U.S.C.] § 1367(d) requires state courts to toll the period while a
supplemental claim is pending in federal court and for 30 days after its dismissal
unless state law provides for a longer tolling period.

*Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 456 (2003) (Scalia, J.) (syllabus).

[19]

The refusal to exercise supplemental jurisdiction over the state-law claims will be reviewed
only for clear error.  *See Bell-Coker v. City of Lansing*, 2009 WL 166556, *8 (W.D. Mich. Jan. 21,
2009) (Maloney, C.J.) (citing *Reynosa v. Schultz*, 282 F. App'x 386, 390-91 (6th Cir. 2008) ("We .
. . will not reverse unless the court below 'relies on clearly erroneous findings of fact, improperly
applies the law, or uses an erroneous legal standard . . . .'") (citations omitted)).

-34-